LEMAN B. HOTCHKISS AND OTHERS, RESPONDENTS, *v.* THE GERMANIA FIRE INSURANCE COMPANY OF NEW YORK, APPELLANT.

SAME *v.* THE TRIUMPH INSURANCE COMPANY, APPELLANT.

SAME *v.* THE REPUBLIC FIRE INSURANCE COMPANY, APPELLANT.

SAME *v.* THE INTERNATIONAL INSURANCE COMPANY, APPELLANT.

SAME *v.* THE EXCHANGE FIRE INSURANCE COMPANY OF NEW YORK, APPELLANT.

SAME *v.* THE HOME INSURANCE COMPANY, APPELLANT.*

*Action on policy of insurance — evidence as to value of property — Witness, hostility of, toward party — impeachment of — prior statement of witness — when admissible — General agent of insurance company — power of — waiver of condition.*

Where an action, brought upon a policy of insurance, is defended on the ground that the insured had set the building on fire, evidence as to what had been offered as rent for the property is properly received as tending to show the value thereof.

Upon the trial evidence was given to show that one of defendants' witnesses had, some seven years before the trial, said that if he ever got a chance he would give Warner (the person accused of setting fire to the building) hell. *Held*, that the evidence was properly received; that the law has fixed no time beyond which ill feeling on the part of a witness toward a party cannot be proved.

To entitle a party to lay a foundation for the impeachment of a witness, it is not necessary to put to the witness the precise question which it is intended to put to the witness by whom he is to be impeached.

Statements made by a witness corroborating his evidence upon the trial, made soon after the transaction to which it relates, or when he was not under the influence of any motive to relate the transaction untruthfully, are competent when it is attempted to be shown that he had given a different relation of the occurrence, or that he testified under the influence of a motive calculated to induce him to testify falsely.

During the examination of one of defendants' witnesses, it appeared that a paper had been drawn and signed by him, which was in the possession of plaintiffs' counsel. The paper having been produced and examined by the defendants'

* These cases were decided at the April term, 1875.

counsel, he proposed to show it to the witness for further identification, and to enable him to explain the circumstances under which it was signed. *Held*, that the evidence was properly rejected; that as defendant did not put the paper in evidence he was not entitled to give any further evidence in regard to it.

A general agent of an insurance company, authorized to fill blanks in policies issued by it, to issue and renew the same, to fix the premiums thereon, and receive and remit them to the company, has power to make a preliminary parol agreement for insurance, and to waive the payment of the premium, although the policy provides that the risk shall not commence until the actual payment thereof.

One of the policies of insurance provided, that it should become void in case repairs or additions were made without the consent of the company noted on the policy. After the issuing of the policy additions and alterations were made with the knowledge of the agent, he making no objection thereto. *Held*, that the condition in the policy had been waived.

Appeal from judgments in favor of the plaintiffs, entered on the report of a referee.

The cases were all tried together before the same referee, the questions of fact being the same in each case.

The plaintiffs were the owners of property known as the Clifton Hotel and Air Cure, and the furniture therein. The defendants issued policies of insurance upon this property and furniture to an amount of $71,000. On the night of the 3d or morning of the 4th of January, 1872, the property insured was destroyed by fire, with the exception of a few unimportant articles of furniture. It had snowed during the evening of the third of January, and early in the morning of the fourth, between four and six o'clock, foot prints were discovered in the snow and immediately traced. It was found that they started at the house of Warner, one of the plaintiffs, ran in direct line to the premises where the fire occurred, and back from those premises to the house of Warner.

The defendants, claiming that the fire was caused by Warner, refused to pay, and these actions were brought.

*Geo. F. Danforth, Jr.*, for the appellants.

*H. O. Cheesbro* and *E. G. Lapham*, for the respondents.

Mullin, P. J.:

The plaintiffs were the owners of a building at Clifton, in the county of Ontario, known as the Clifton Hotel and Air Cure.

They insured it and the furniture, etc., therein, in different insurance companies to the amount of $71,000. On the night of the 3d or morning of the 4th of January, 1872, the building was set on fire and wholly destroyed, together with its contents. Action was brought against the companies issuing said policies, to recover their respective shares of the loss, and they severally defended as follows: All the companies deny a part of the allegations in the complaint and admit the residue, and all set up, as a defense, that the building was set on fire by the plaintiffs, or by their procurement. The Home Insurance Company, The Republic Insurance Company, The Exchange Insurance Company, The Germania Insurance Company and The International Insurance Company, set up as a defense, that, in violation of a condition of the policy, the premises had been permitted to remain vacant and unoccupied. The Home, The Republic, The Germania and The International defend on the ground that the policy had become void by reason of the violation of the condition of the policy requiring all other insurance to be noted on the policy, and that although other insurance had been obtained, they had not been noted. The Exchange Insurance Company set up as a defense, that the policy had become void because the premiums had not been paid. The International Insurance Company set up as a defense, that, in violation of the condition of the policy, plaintiff had made alterations and repairs without the consent of the company.

On the trial the defendants' counsel excepted to several rulings of the referee, admitting evidence on the part of the plaintiffs. Several of these exceptions do not seem to me to be of sufficient importance to require examination. I shall examine only a few of them. The referee permitted the plaintiffs to prove by Hotchkiss, one of the plaintiffs, that one Nittle had offered $10,000 a year as rent for the property for a term of years. One of the defenses set up in the several answers, was, that plaintiffs had themselves set the building on fire, and to rebut this defense plaintiffs attempted to show that the building was worth more than the amount insured, and, as one evidence of the value, they proposed to show the amount of rent they had been offered for it. I think it was competent for that purpose, notwithstanding it might be incompetent for

any other purpose in the case. If the property would command such a rent, the inference would be a very legitimate one, that it would not be for the interest of the owners to destroy it. The weight to be given to the evidence would depend upon whether the offer was made in good faith by a person of pecuniary ability to pay it.

The plaintiffs were permitted to prove by a witness, that the building destroyed was better furnished than the Sanitorium (a building used as water cure at Clifton). Inquiry had been made as to the relative value of the building of these two establishments, and it was therefore competent to show that one was better furnished than the other, and therefore more valuable. This evidence, like that which has been considered above, could only apply to the question of motive of plaintiffs to destroy the property, and its influence on that question is so slight, that even if it was less competent than it is, its admission should not induce us to grant a new trial.

From the reference to a couple of cases in the Court of Appeals, I infer that the defendants' counsel considers the evidence as given to prove the value of the Air Cure property. I do not so understand the object in giving the evidence. As already suggested, the object would seem to have been to show that in one respect, only, it was more valuable, while it was shown to be much less in other respects. Indeed, the relative value of the furniture in the two establishments is not proved, except by showing that it was worth more. Such evidence could not prejudice the defendants, and was of no benefit to the plaintiffs.

The plaintiffs were permitted to prove, by the witness Martin S. Warner, that, some seven years before the trial, he heard Lewis, a witness sworn on behalf of defendants, say to Warner, one of the plaintiffs, that if he ever got a chance he would give him hell. This threat was made because of a difficulty that had arisen between Lewis and Warner, in reference to an injury that the latter accused the former of doing to one of his (Warner's) hogs; also, about Lewis' cutting down a coon tree and running with other women. The counsel insists that the threat was too remote in point of time from the trial, to make the evidence competent. It certainly was competent to prove a state of feeling toward Warner on the part of the witness, and I am not aware that the law has

fixed any time beyond which ill feeling on the part of a witness toward a party may not be proved. The plaintiffs were permitted to ask the witness, George Walker, whether Lewis, one of defendants' witnesses, asked him (Walker) if he could swear that he was at home the night of the fire. The statements of Lewis were incompetent, except for the purpose of impeachment. It is not suggested how the inquiry offered to be proved, could tend to contradict him. It is not said that the question had been put to Lewis, and competent for that reason. But if it had, it was so entirely collateral, that the answer of Lewis, if he denied having asked the question, was conclusive upon the party. The evidence was of no importance in the case.

Walker was asked whether Lewis said any thing to him about the fire, or about the insurance companies, and whether he said, keep still, there is money in this. I am unable to perceive any objections to the first branch of the question. It was doubtless asked with a view to contradict him, as his statements were inadmissible for any other purpose, and whether the evidence to be given in answer to the question was admissible for that purpose, could only be known when it was given. It is a mistake to suppose that to entitle a party to lay a foundation for an impeachment of a witness, it is absolutely necessary to put to the witness the precise question which it is intended to put to the witness by whom he is to be impeached. The form of the question is in the discretion of the court. (*Sloan* v. *N. Y. Central*, 45 N. Y., 125.) The first branch of the question was not answered. The second branch of the question was competent, as bearing on Lewis' moral character, as is clearly shown by the answer. It would seem that Lewis attempted to induce the witness to suppress what he knew in regard to the fire, in order to get money for disclosing it. The evidence was clearly competent. The exception to the admission of negotiations between the plaintiff Hotchkiss, and the insurance agent, Holmes, and what knowledge he had as to other insurance being effected, and repairs, etc., made, are reserved until I come to the rulings of the referee upon these subjects.

The defendants' counsel excepted to sundry rulings of the referee excluding evidence offered by him.

On the cross-examination of the witness Rockwell, defendants'

counsel asked him if he did not testify on a former occasion, that he had measured certain foot-prints in the snow, four or five times at the door. The object would seem to have been not to contradict the witness, but to show that he had testified to a state of facts on a former occasion, more favorable to the defendants' view of the case than upon the trial. If this was the purpose with which the question was put, it was properly overruled. Statements made by a witness corroborating his evidence upon the trial, made soon after the transaction to which it relates, or when he was not under the influence of any motive to relate the transaction untruthfully, are competent, where it is shown that he had given a different relation of the occurrence, or that he testified under the influence of a motive calculated to induce him to testify falsely. (*Robert* v. *Hackley*, 23 Wend., 50.) In this case the object was not to support the witness, but to get his statement of a fact, made on a former occasion, in as evidence, different from what he testified to it on the trial. For such a purpose it was not competent.

The defendants' counsel asked the witness Rockwell, how a track of a human foot in the snow compared with the track made by Warner, one of the plaintiffs, whom defendants charge with burning the building. The plaintiffs' counsel objected to the evidence, and the objection was sustained. The tracks could not be presented before the referee ; the fact that they had existed was a very important one in the case. The referee must get a description of the tracks from the witness who saw them, and a comparison between the tracks found in the snow and those made by Warner, could only be made by the witness who saw it. A description could be given by stating the length and breadth of the tracks, and the marks left by the sole of the boot or shoe in the snow, and whether the toes of the wearer turned in or out. But all this might fall far short of enabling the jury to determine whether there was such a resemblance in the tracks as would enable them to say they were made by the same foot. The defendants had the right to have the opinion of the witness, if it can be called an opinion, after stating to the jury the measurement made, and peculiarities discovered by him in the tracks.

The same witness was asked by defendants' counsel, how a pair

of rubber boots, found by him in a wagon in a hotel yard, compared with the track. The plaintiffs objected, and the referee overruled the question. This question was not answered. The question was then put, how they measured, and he answered, he measured them and they compared precisely, only the stick he measured with was a little longer than the boot. It will be seen that the question objected to was not answered, but another, substantially the same, was put and answered. The question answered called for a comparison of the tracks in measurement, and not for an opinion. The question was competent, but, although the ruling was erroneous, it did not prejudice the defendants to such a degree as to justify the court in granting a new trial.

During the examination of Levi Lewis, by the defendants, it appeared that a writing had been drawn and was signed by the witness, and it was in the possession of plaintiffs' counsel. The defendants' counsel called for its production, and it was produced and examined by the defendants' counsel, and he proposed to show it to the witness for further identification, and that the circumstances attending its execution might be explained by him. Plaintiffs' counsel objected to the offer, and the court sustained the objection. The witness having admitted the execution of the paper, no further proof was required to entitle defendant to put it in evidence. He did not offer it in evidence, and I am unable to discover why he should be permitted to give further evidence in regard to it. The contents of the paper are not shown; we cannot say that it related to any material question in the case.

The Exchange Insurance Company sets up, as a defense to the action on its policy, that the policy was not issued, nor premiums paid, until after the destruction of the property, and the policy never became an operative, binding obligation. The referee finds that the policy was not issued, nor premiums paid, until after the fire, but he also finds that John H. Holmes, before and at the time of issuing the policy, was agent of defendant, in the town of Phelps, in the county of Ontario, and, as such agent, had authority to fill blanks in policies signed by defendant or its officers, and to issue the same as occasion might require; to issue renewals of policies and to fix the premiums therefor; to receive and remit all premiums accruing to defendant upon policies issued by it. Holmes was agent for several other

insurance companies, and, among them, for the Phœnix of Hartford, and he had insured plaintiffs' buildings, etc., in said company for $2,000, and the policy expired on the 1st January, 1872; another policy for $1,000 had become worthless. About the 15th December, 1871, Holmes informed the general agent of defendant of these facts, and the general agent authorized Holmes to insure the plaintiffs' property in the Exchange Company, to an amount not exceeding $4,000. On the morning of the 1st January, 1872, Holmes called on Hotchkiss, one of the plaintiffs, and it was arranged between them that the Phœnix policy should be allowed to expire, and a policy in the Exchange for $3,000 should be issued to plaintiffs. Hotchkiss made a memorandum on the back of the Phœnix policy as follows: "Expired and put in the Exchange of New York;" and Holmes, on his return to his office, made a memorandum in writing, stating in substance the amount of the insurance, the property insured, the name of the insured, the company taking the risk, and the date when it commenced. Subsequently a policy was made out in pursuance of the arrangements and delivered to the plaintiffs after the fire. The premium was not paid till after the fire, and when it was remitted to defendant it was refused.

The referee further finds that the plaintiffs were able and ready and willing to pay said premium when demanded, and the delay in the payment of it was owing to the neglect of Holmes to fill up and deliver the policy and receive the money, which would have been paid at any time after the arrangement. The referee's conclusion of law upon this branch of the case is, that, permitting the Phœnix policy to expire at the request of Holmes for the benefit of defendant, together with their promise to pay the premiums on the policy to be issued, was a sufficient consideration for the agreement by the agent to deliver the perfected policy set out in the complaint. He also finds that Holmes, having authority to issue policies, had the right to make the preliminary agreement last mentioned. He also finds that the agent had authority to waive the payment of the premiums, notwithstanding the condition of the policy that the risk shall not commence until the actual payment of the premium. He also finds that, as the answer admits the policy but denies its obligation, upon the sole ground of non-payment of the premium, the plaintiffs must recover if the agent has rightfully waived

that condition, whether he had or had not power to bind defendant by a preliminary contract.

It seems to be also settled that a verbal contract of insurance is valid and may be enforced. (May on Ins., 13; *The Commercial M. M. Ins. Co.* v. *The Union M. Ins. Co.*, 19 How. [U. S.], 318; Angell on Fire and Life Ins., § 833; *Rhodes* v. *Railway Pass. Ins. Co.*, 5 Lans., 71.) Holmes was a general agent of the defendant, and, as such, had the power to make the contract to insure, authority to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies on behalf of the company (and this was the precise power conferred by defendant on Holmes by a written power of attorney, dated 2d November, 1871). This is sufficient to constitute a general agent at the place where the business of the agent is transacted. (*Post* v. *Ætna Ins. Co.*, 43 Barb., 351; *Ellis* v. *Albany City Fire Ins. Co.*, 50 N. Y., 402.) The parol contract binds the company until the written policy is executed and delivered. (*Kelly* v. *Commonwealth Ins. Co.*, 10 Bos., 82; *Whitaker* v. *Farmers' Un. Ins. Co.*, 29 Barb., 312.) Holmes, being a general agent of defendant, had power to waive the payment of the premiums, or to postpone it until after the issuing and delivering of the policy. (*Sheldon* v. *Atlantic Fire Ins. Co.*, 26 N. Y., 460; *Wood* v. *Poughkeepsie M. Ins. Co.*, 32 id., 619; *Boehen* v. *Williamsburgh Ins. Co.*, 35 id., 131; *Ellis* v. *Albany City Fire Ins. Co.*, 50 id., 402.) And he did waive it, as is found by the referee. The appellants' counsel insists that the referee should not have found that Holmes had the authority to enter into the parol agreement to insure, nor that such an agreement was actually made, or that there was a waiver of the payment of the premiums. So far as these questions are questions of law, the authorities cited authorize the finding, and so far as they are questions of fact, the evidence authorizes the finding. The only witnesses to the agreement between Hotchkiss and Holmes were these persons themselves, and they both testify to facts found by the referee. There being no conflicting evidence, the referee was bound to find in conformity to their evidence. (*Newton* v. *Pope*, 1 Cow., 109; *Dolsen* v. *Arnold*, 10 How., 528.) Upon this evidence there can be no doubt that it was left optional with Holmes to call upon Hotchkiss for the premiums or

he might pay it out of his own pocket, and apply it in payment of a debt due from him to Hotchkiss. In any event, payment down of the premiums was not demanded, but it was payable whenever demanded. To this extent the agent had the power to waive the performance of the condition. It is said that Holmes was the agent of both parties, and, as he could not act for both, the agreement was void. Holmes was agent for plaintiff only for the purpose of seeing that policies were kept in life by the companies in which they were originally taken; when applications were made to new companies I understand it was done with the knowledge and consent of Hotchkiss. If this was not the general rule, it certainly was done when insurance in defendant's company was applied for. (May on Insurance, 609, 610.)

By the sixth condition of defendant's policy, it is declared that the person or persons, other than the assured, who have procured the insurance to be taken by the company, shall be deemed to be the agent of the assured, and not of the company, in any transaction relating to this insurance. No one but the assured applied to defendant's agent to insure the property of plaintiff. The application to the agent was in legal effect an application to the company. If the contract could be said to have been made by the agent with himself, acting as the agent for both parties, it would be void. Holmes, finding that a policy for $1,000 was worthless, and another for $3,000 was about to expire, proposed to Hotchkiss to transfer the risk to defendant's company, and it was assented to. There can be no pretense that Holmes was making a contract as agent for the plaintiff.

In the policies issued by the International, Phœnix and Home of New York, there is a condition that the policies should become void in case repairs or additions were made, unless consent therefor was noted on the policies. One of these policies was issued in April, 1871; the other in December of that year. Repairs and alterations on the property were made from the season of 1868 until the 15th June, 1871, and they were not noted on the policy issued in April. The referee finds that the defendants' agent knew of the additions and alterations as they were made on the property, and of the insurance effected thereon, and made no objection thereto. If this knowledge is in law or in fact a waiver of the condition,

then plaintiffs are entitled to recover; otherwise not. The condition as to alterations, etc., can apply only to the policy issued in April, as there were no repairs after the fifteenth June.

The power of a general agent to waive conditions in a policy of insurance, has been very much enlarged by the courts within the past few years; and it would seem that the power of the agent in this respect, is about coextensive with that of the company itself. (May on Ins., 145.) This author at page 155, says: "A general agent, there being no limitation of his authority, may even by an oral agreement extend the scope of a policy already issued, so as to make it cover property not embraced in it when issued, the policy being an open one; so he may waive a condition making the validity of the policy dependent on the prepayment of the premiums; so he may waive a breach of the condition requiring notice of other insurance, by delivering a renewal receipt signed by the president and secretary, and accepting the premiums after knowledge of the breach though the receipt by its terms is not to be effected unless countersigned by the agent, and he may give credit for the renewal premiums or take a note therefor and bind the company by parol though he holds such receipt and waive a requirement that the policy to be valid must be countersigned by him." In Bliss on Insurance, 467, it is said, an agent with powers to effect insurance, has full power to waive conditions and to correct an error in the policy after its issue. (*Acey* v. *Fernie*, 7 M. & W., 151.) Holmes commenced issuing policies to plaintiffs soon after they acquired title to the property, and he continued to do so until the fire. During all this time the plaintiffs were altering and repairing the building, and he knew it. If there is any case in which the conditions of the policy requiring notice of other insurance and consent to repairs can be waived by an agent so as to bind the company, it was done in this case.

The referee finds that the defense that the building was set on fire by the plaintiffs, or by their procurement, was not proved. To establish the defense, the defendants gave evidence tending to prove that, in the morning after the fire, tracks of a man's boots were discovered coming from Warner's house to a point near the building that was destroyed. They could not be traced any nearer the building, because the heat had melted the snow. The tracks

commenced at or near Warner's gate.  The feet making the tracks toed in, as it is termed, and had on a pair of India rubber boots.

Boots of the same description, as to form of sole, size and shape, were found at Warner's very soon after the fire, and witness, who had compared the boots found with the tracks, testified that they corresponded precisely.  Tracks similar in all respects were discovered passing from Warner's house to the Air Cure, nearly parallel to those that extended from the Cure to Warner's.  Evidence was also given of the declarations of Warner, that he was guilty of setting the fire, and expected to be arrested for it, and of his having employed one Lewis to procure for him another pair of rubber boots, and to remove the outer sole from those he had been accustomed to wear.  It was claimed on the trial, and is alleged in the appellants' points, that the Cure was not a paying institution, and that it was insured for more than it was worth, and that the owners had a direct, pecuniary interest in having the building destroyed.  Besides these more important facts, there were proved divers others tending to criminate Warner; but, in the view we take of the finding of the referee, it is unnecessary to refer to them more particularly.  On the part of the plaintiffs, evidence was given tending to prove that Warner, for some time before the fire, had been out of health, having been partially paralyzed in the left side.  From that attack he walked lame.  On the night of the fire, he was at home with his family; retired soon after nine o'clock; he slept in a room adjoining that in which his wife slept; she heard him get up in the night about twelve o'clock, and his daughter got up at the same time; his wife lay awake about one-half an hour, and she heard no other noise during the night.  The plaintiffs also proved that, in the morning after the fire, tracks of a man's feet were discovered extending from the Cure in an opposite direction to those going to Warner's, and that they appeared to have been made by a person running or walking fast.  Had the evidence of the plaintiff's family been out of the case, and the referee had found that Warner set the building on fire, the finding could not probably be disturbed.  With their evidence in and credited, the finding that the allegation that Warner set the fire is not proved, must be received as conclusive, and the judgment affirmed.

The referee saw and heard the witnesses; he is a learned and able lawyer, without interest or bias, as competent as any man can be to hear and determine the questions presented on the trial. If, therefore, there is any case in which the finding of a referee should be held conclusive, this is one. Warner was indicted and tried for setting the fire, and was acquitted. The referee in this case holds the charge against him not proved. Is there, under the circumstances, any probability that a different result would be reached, were a new trial to be granted, unless new and more satisfactory evidence should be discovered? The expenses of the litigation must be enormous, and, unless the plaintiffs are rich, it would be equivalent to a denial of justice, to impose upon them the expenses of another trial, unless we can see that, by the rulings and findings of the referee, injustice has been done to the defendants, to prevent which a new trial is necessary, and that if the evidence on the part of the defendants which was rejected had been received, and that which was received against their objections had been rejected, a different result might be reached.

I am satisfied that the same result would have been reached if the rulings on the trial had all been in favor of the defendants.

The judgment in this and the other cases must be affirmed.

Judgments affirmed.